**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone:  (305) 374-0440
e-mail:     paul@markmigdal.com
            lauren@markmigdal.com

**MORTGAGE RECOVERY LAW GROUP, LLP**
MICHAEL H. DELBICK (CA State Bar No. 139200)
550 North Brand Boulevard, Suite 1100
Glendale, California 91203
Telephone:  (818) 630-7900
e-mail:     mdelbick@themrlg.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
JOSHUA H. PACKMAN (to seek admission pro hac vice)
3501 Fairfax Avenue
Arlington, Virginia 22226
Telephone:  (703) 562-2816
e-mail:     jpackman@fdic.gov

Attorneys for Plaintiff Federal Deposit
Insurance Corporation as Receiver
for Washington Mutual Bank

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>LENNAR MORTGAGE, LLC, as successor to EAGLE HOME MORTGAGE, INC. and UNIVERSAL | Case No.<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

AMERICAN MORTGAGE COMPANY OF CALIFORNIA,

Defendant.

## INTRODUCTION

1. Pursuant to identical written agreements, Eagle Home Mortgage, Inc., and Universal American Mortgage Company of California (each a "Broker" and collectively "Brokers") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). As part of their agreements, the Brokers promised to indemnify WaMu for any losses which in any way arise out of or relate to an alleged act or omission of the Brokers.

2. During the relevant time period when the Brokers contracted with and brokered loans to WaMu, Lennar Corporation operated using multiple financial services subsidiaries, including the Brokers. Since that time, Lennar Corporation has consolidated all of its financial services operations into a single subsidiary, Lennar Mortgage, LLC ("Lennar Mortgage" or "Defendant"). As a result of this consolidation, Lennar Mortgage became the legal successor to the Brokers.

3. After WaMu funded the loans from the Brokers, WaMu sold the brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least twenty-seven (27) mortgage loans brokered by the Brokers ("Lennar Defective Loans").

4. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R" or "Plaintiff") incurred losses settling the Trustee's claims. FDIC-R's losses arose out of and/or related to the Brokers' acts or omissions, including, *inter alia*, the Brokers' representation of and assistance to borrowers, and collection, preparation, and submission of loan applications and documentation that

misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

5. FDIC-R demanded that Lennar Mortgage, as legal successor to the Brokers, honor its written contractual indemnification obligation. Because Lennar Mortgage has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

## PARTIES, JURISDICTION, AND VENUE

6. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

7. Lennar Mortgage is a Florida limited liability company with its principal place of business in Miami, Florida. Lennar Mortgage is registered and licensed to do business in California and transacts business from branch offices in Valencia, California; and Corona, California.

8. Eagle Home Mortgage, Inc. was a Washington corporation with its principal place of business in Kirkland, Washington. At all relevant times, Eagle Home Mortgage, Inc., was a financial services subsidiary of Lennar Corporation. On October 1, 2006, Eagle Home Mortgage, Inc., merged into Eagle Home Mortgage, LLC, another financial services subsidiary of Lennar Corporation. Since that time, Eagle Home Mortgage, LLC, and Lennar Mortgage have shared common directors, officers, personnel, and assets, including Lennar Mortgage's use of the trade name "Eagle Home Mortgage" as an assumed business name in multiple jurisdictions. Eagle Home Mortgage, LLC, subsequently became inactive. Lennar Mortgage is the

3

COMPLAINT

legal successor to Eagle Home Mortgage, LLC, as the mere continuation of Eagle Home Mortgage, LLC, or as a result of the *de facto* merger of Eagle Home Mortgage, LLC, into Lennar Mortgage.

9. Universal American Mortgage Company of California was a California corporation with its principal place of business in Corona, California. At all relevant times, Universal American Mortgage Company of California was a financial services subsidiary of Lennar Corporation. Effective June 5, 2017, Universal American Mortgage Company of California changed its name to Eagle Home Mortgage of California. Eagle Home Mortgage of California merged into Lennar Mortgage effective August 10, 2019. Lennar Mortgage is the legal successor to Universal American Mortgage Company of California by merger.

10. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by Universal American Mortgage Company of California in this district and the place of performance for all or some of the obligations sued upon was in this district. Venue is also proper in this district pursuant to 28 U.S.C § 1391(b)(1), (c)(1) because Defendant is subject to this Court's personal jurisdiction with respect to this civil action in this district, and therefore Defendant "resides" within this district for venue purposes.

### FACTUAL ALLEGATIONS

12. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

13. On information and belief, the Brokers engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

**A. Brokers' Contractual Obligations**

14. The Brokers and WaMu had contractual business relationships governed by mortgage broker agreements, including the Mortgage Broker Agreement entered into by Eagle Home Mortgage, Inc., on May 6, 2005, attached hereto as Exhibit 1, and a substantially identical Mortgage Broker Agreement entered into by Universal American Mortgage Company of California on September 30, 2005, attached hereto as Exhibit 2 (collectively, the "Agreements").

15. The Brokers agreed that they would each prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. The Brokers were responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrowers, counseling and assisting the borrowers in the financing process; choosing the loan product with the borrowers; collecting relevant information and documentation in support of the loan applications; preparing the loan applications and submission packages; and submitting the completed loan packages to WaMu.

16. The Brokers were compensated for any loans funded by WaMu.

17. Pursuant to the Agreements, each Broker expressly agreed to indemnify WaMu as follows:

> [Broker] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs (including, but not limited to, reasonable attorneys' fees and costs incurred by [WaMu], with or without suit) which in any way arise out of or relate to an alleged act or omission of [Broker] . . . in connection with an Applicant, an Application Package, a Mortgage Loan, or this Agreement. Ex. 1 ¶ 6; Ex. 2 ¶ 6.

**B. The Lennar Defective Loans**

18. Pursuant to the Agreements, the Brokers brokered the 27 Lennar Defective Loans summarized on Exhibit 3, which is incorporated by reference and attached hereto.

19. As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the Lennar Defective Loans. Accordingly, FDIC-R incurred losses in connection with the Lennar Defective Loans.

20. The Brokers prepared and submitted loan applications and materials for the Lennar Defective Loans that contained misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral, *inter alia*.

21. As an example, the loan documents for borrowers BL and PL contained numerous deficiencies, inaccuracies, and material misrepresentations. Eagle Home Mortgage prepared and submitted loan application documents for BL and PL that misrepresented their monthly earnings as $60,000, more than six times their *actual* monthly earnings. In addition, the documents that Eagle Home Mortgage submitted further overstated BL and PL's ability to repay the requested loan by failing to disclose that BL and PL had incurred over $660,000 in new mortgage debt on two properties purchased just prior to the subject property.

22. As another example, Universal American Mortgage Company of California prepared and submitted loan application documents for two loans for borrowers ML and AD that misrepresented ML and AD's ability to repay the loan by misrepresenting that their monthly earnings were $9,796, which was more than six times their *actual* earnings. In addition, the applications that Universal American Mortgage Company of California submitted misrepresented that the property would

be ML and AD's primary residence, but, in fact, ML and AD resided at another property and did not reside at the purchased property as a primary residence.

23. Taken together, the 27 Lennar Defective loans include, *inter alia*, loans with undisclosed and/or misrepresented mortgage loan obligations, loans with false or misleading rental credit histories, loans with false employment histories, loans with inaccurate appraisals, and loans with false occupancy representations and certifications.

### C. WaMu's Sale of the Lennar Defective Loans to the RMBS Trusts

24. After WaMu funded the Lennar Defective Loans, WaMu sold each of them to the RMBS Trusts.

25. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies the Brokers provided to WaMu, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral. With respect to defective loans, WaMu was liable to the RMBS Trusts, *inter alia*, where there was a material misrepresentation or omission in a loan application or other supporting documentation.

### D. The Trustee Action and FDIC-R's Settlement with Trustee

26. After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from such loans that WaMu sold to the RMBS Trusts, including the Lennar Defective Loans.

27. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

28. Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including

representation and warranty breach claims arising out of or relating to the Lennar Defective Loans. On September 5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the Lennar Defective Loans. Settlement of the Trustee's claims for that court approved amount was objectively reasonable. FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual. 12 U.S.C. § 1821(d)(14).

29. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the Lennar Defective Loans. The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, *inter alia*: misrepresentations, negligence, or fraud that occurred in the origination of the loan; appraisals that were inconsistent with underwriting guidelines; misrepresentations of income; and loan-to-value ratios that exceeded 100 percent. Given the Brokers' roles and conduct in connection with the Lennar Defective Loans, including the Brokers' relationships to the borrowers and their preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability to the Trustee and loss arose out of or related to the Brokers' acts or omissions in connection with an Applicant, an Application Package, a Mortgage Loan, or the Agreement.

**E. Lennar Mortgage's Breach of the Indemnification Obligations**

30. On June 23, 2021, FDIC-R sent a demand letter to Lennar Mortgage seeking indemnification for its losses arising out of and/or related to Eagle Home Mortgage's acts and omissions in connection with the Lennar Defective Loans. On February 3, 2022, FDIC-R sent a demand letter to Lennar Mortgage seeking indemnification for its losses arising out of and/or related to Universal American Mortgage Company of California's acts and omissions in connection with the Lennar

Defective Loans. Lennar Mortgage has not honored its obligation to indemnify under the Agreements.

31. The Agreements provide that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce FDIC-R's rights under the Agreements, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

32. All conditions precedent to the relief sought in this action have been fulfilled.

## CLAIM FOR RELIEF

## (Contractual Indemnification)

33. Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

34. The Agreements are valid and enforceable contracts.

35. Plaintiff substantially performed all its obligations under the Agreement.

36. FDIC-R is entitled to indemnification from Lennar Mortgage, as legal successor to each of the Brokers, for losses FDIC-R suffered settling the Trustee's claims, arising out of or relating to the Brokers' acts or omissions in connection with the Lennar Defective Loans.

37. Lennar Mortgage breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

A. A judgment against Lennar Mortgage in an amount to be proven at trial for its breach of its indemnification obligations;

B. Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

C. Reasonable attorneys' fees;

D. Costs and expenses; and

E.  Any other relief as the Court deems just and proper.

DATED: August 11, 2023          MARK MIGDAL & HAYDEN

By:      /s/ Paul A. Levin
Paul A. Levin
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

DATED: August 11, 2023          MORTGAGE RECOVERY LAW GROUP, LLP

By:      /s/ Michael H. Delbick
Michael H. Delbick
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

DATED: August 11, 2023          FEDERAL DEPOSIT INSURANCE CORPORATION

By:      /s/ Joshua H. Packman
Joshua H. Packman (to seek admission pro hac vice)
Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

COMPLAINT